## Smith Botsford and another v. John G. Simmons.

*Practice: Finding of facts: Correct conclusion: Immaterial reasons.* Where, upon a trial by the court without a jury, judgment has passed for the defendant, and it appears from the facts found that the plaintiff was not entitled to judgment, the reasons stated by the court for its conclusion are immaterial.

*Garnishee proceedings: Distinct grounds of action: Practice.* Our statute regulating garnishee proceedings (*Comp. L. 1871, § 6465*) authorizes the issuing of the writ upon two grounds, (1) the possession of property, money, goods, chattels, credits and effects belonging to the principal defendant, and (2) an indebtedness to the principal defendant; and these grounds are distinct, and the party is never subject to be charged and held upon one, when the process is confined to the other, except where the facts are such as to bring him within both.

*Garnishee proceedings: Admissions: Indebtedness: Property, etc.: Practice.* An admission by the garnishee defendant of an indebtedness to the principal defendant is not within the scope of the claim that he holds or controls property, money, etc., belonging to the principal defendant, nor will it authorize a judgment on such claim.

*Purchasers on joint account: Sales in name of one only: Indebtedness: Garnishee proceedings.* Where T and S have purchased goods on joint account, T furnishing all the money and S doing the buying and selling, and S has made a sale in his own name and has settled with T and received his share of the profits on the basis of such sale, and turned over to T the draft on his consignee, with the bill of lading, the indebtedness from such consignee for such purchase is not one due or owing to S, so as to be reached by garnishment in favor of his creditors against the protest and claim of T.

*Submitted on briefs June 18.    Decided October 5.*

Error to Wayne Circuit.

The finding of facts and conclusions of law in this case were substantially as follows:

"John G. Simmons, the principal defendant, and F. W. Thrall, the claimant, in the winter of 1873–4, were each engaged in the produce commission business in Cleveland, Ohio, and January 30, 1874, Simmons purchased a quantity of dried apples at Fairmount, West Virginia, which were bought and marked and shipped in his name to Cleveland, but the money to make the purchase and to pay the freight was furnished by Thrall to Simmons by two checks dated February 5th and 6th, 1874, and the apples were taken to Thrall's store.    It was understood between Thrall and Sim-

mons that Thrall should furnish the money to make the purchase, that the property should be sold and the profits on the adventure shared equally. Simmons was to receive half of the profits as compensation for his services.

"February 9th, 1874, Simmons entered into a contract by letters and telegrams (copies of which are annexed) with Thomas Hill of Detroit, the garnishee defendant, for the sale of apples to him. This contract was made in the name of Simmons alone. Nothing was said about the ownership of the apples, and Thrall's interest in the transaction was in no way disclosed to Hill until after the garnishment. On the same day the apples were shipped by Simmons to Hill at Detroit; but the bill of lading (of which a copy is annexed) was taken in Thrall's name, and together with a draft by Simmons on Hill, payable to Thrall, at five days' sight, was delivered by Simmons to Thrall, who forwarded them, annexed together, through the bank for collection. All that Thrall had to do, or did, with the apples, was to attend to the receipt of them at his store, and to see them as they went out.

"Simmons also made an invoice in his own name and enclosed the same to Hill in a letter.

"February 10, 1874, Thrall and Simmons settled and Thrall paid Simmons his share of the profits. In making this settlement Thrall rendered Simmons an account current, in which he charged Simmons with the amount of the original purchase, freight inclusive, and with ten barrels of the apples which Simmons had sold to one Hale, and with one-half the profits, and gave him credit for the amount received from Hale, for the amount of the original purchase and freight, and for one-half of the profits.

"When the draft reached Detroit, Hill refused to accept it because of an error in the amount, it being sixteen dollars too large. The draft was returned, and on the 16th day of February, 1874, Simmons gave Thrall another draft for the correct amount; but on the same day and before

32 MICH.—45.

the draft had been presented to or accepted by Hill, the garnishee summons in this case was served. The last draft was for the sum of one thousand three hundred and seventy-four dollars and ninety-six cents, which amount the garnishee in his disclosure admits to be correct.

"July 18, 1874, judgment was rendered against the principal defendant for two hundred and eighty-eight dollars and forty-two cents damages, and costs.

"Counsel for plaintiff now asks judgment against the garnishee defendant and against the right of the claimant."

From the above finding of facts the judge found the following conclusions of law:

"1. That Simmons acted as the agent of Thrall.

"2. That Simmons could maintain an action against Hill either on the contract or for goods sold and delivered.

"3. That Thrall could be held liable in an action by Hill on the contract for a failure to deliver the goods or other breach thereof, and that he could maintain an action against Hill for the price of the goods, either on the contract or on the common counts for goods sold and delivered.

"4. That, as against Hill, Thrall, the undisclosed principal, cannot avail himself of the benefit of the contract with Simmons, without subjecting himself to the same defenses that Hill would have if Simmons was the real party in interest.

"5. But as Hill has no defense as against either Simmons or Thrall, and concedes that one of them is entitled to the money, the question is whether the creditors of Simmons have a right to treat the indebtedness as due to Simmons and to charge Hill as his garnishee.

"6. Although in one sense Hill is indebted to Simmons, yet in substance he is indebted to Thrall, and as against the creditors of Simmons, there is nothing that would estop Thrall from insisting upon his ownership of the chose in action.

"Therefore, Hill, the garnishee defendant, cannot be held liable in this case.

"Let a judgment be entered sustaining Thrall's right as against plaintiffs and in favor of the garnishee defendant."

*Don M. Dickinson*, for plaintiffs in error.

*Hoyt Post*, for defendant in error.

GRAVES, CH. J:

In July, 1874, the plaintiff in error recovered judgment against Simmons for damages, two hundred and eighty-eight dollars and forty-two cents, besides costs of suit, and whilst that suit was pending, and on the 16th day of February of the same year, they summoned Hill to answer as garnishee. The affidavit for this summons is *not* in the printed record, but the summons itself is set out, and it thereby appears that the claim against Hill was *not* that he was in any way *indebted* to Simmons, but that he "had property, money, goods, chattels, credits and effects in his hands, or under his control belonging" to Simmons. Mr. Hill appeared and made disclosure, and according to the record he admitted himself to be *indebted* in the sum of one thousand three hundred and seventy-four dollars and ninety-six cents, either to Simmons or to one Frederick W. Thrall, and averred that he was unable to say to which of the two he was thus indebted. It does not appear that he was asked whether he "had property, money, goods, chattels, credits or effects" in his hands or under his control belonging to Simmons, nor does it appear that any thing was said in relation thereto, although that was the specific ground of the proceeding against him.

In this state of the case a stipulation was made by the plaintiff's attorney and the attorneys for Simmons of the following tenor: "It is hereby stipulated and agreed by and between said plaintiffs and said garnishee defendant, by their respective attorneys, that an order may be entered in said cause permitting and requiring Frederick W. Thrall, named

in the disclosure of said garnishee defendant as claiming to be entitled to the indebtedness therein mentioned, to appear in said cause and maintain his rights in the premises, and that an issue be framed and tried between said Thrall and said plaintiffs." On the authority contained in this stipulation for an issue to decide whether Hill's confessed indebtedness was to Simmons or Thrall, the court afterwards made an order as follows: "On reading the stipulation heretofore filed between the plaintiffs and the garnishee defendant in the above cause by their respective attorneys, and on motion of Wilkinson and Post, attorneys for said defendant and said garnishee defendant, and for Frederick W. Thrall, ordered that said Frederick W. Thrall be permitted to appear and maintain his claim to said fund admitted by the garnishee defendant in his answer to be in his hands, and that the same be tried and submitted for determination at the same time, and together with the trial of the statutory issue claimed by said garnishee defendant in said cause."

This proceeding for deciding a supposed question between Simmons and Thrall, for the purpose of settling whether or not the plaintiffs were entitled as against Hill, was rested on § *6492, C. L.*

The actual frame of the issue suggested by the foregoing order does not appear in the printed record. As, however, the order indicated what it should be, we may perhaps assume that it followed the order. The trial was before the court, and resulted in a special finding of facts and a judgment thereon sustaining Thrall's right, and adverse to the liability of Hill, the guarnishee. The plaintiffs then brought error on this judgment, and they complain of the conclusions of law on the facts. If upon the whole record they were not entitled to recover against Hill, the reasons stated by the court below for its conclusion are immaterial. It cannot have escaped notice that the case presents several striking incongruities. The whole garnishee proceedings were founded on the act of March 16th, 1861, as amended,

and which appears in the compiled laws as part of *chapter 202.*—See *C. L., Vol. 2, p. 1818.* This act allows a garnishee prosecution where the party to be garnished is claimed to hold one or both of two separate positions, and the ground set out when the proceeding is initiated is the ground to which the after proceeding should be confined.

The first ground is, that the person to be garnished is alleged to have property, money, goods, chattels, credits and effects in his hands or under his control belonging to the defendant; and the second is, that such person is indebted to the principal defendant.—§ *6465.* These grounds are distinct, and the party is never subject to be charged and held upon one, when the process is confined to the other, unless it chance to happen, which must be very seldom, that the true condition of the matter in question is at the same time within the legal meaning of the second ground, and of some term in the first. An examination of the act will show that the legislature considered the distinction between the two grounds as one to be carefully observed in the management of the remedy. The distinction is plainly drawn in the first section, and the two grounds, though allowed to be joined, are nowhere confounded. The interlocutory proceedings, as well as the kind of judgment, are to be different in the one case, from what they are required to be in the other.—See the sections from § *6471* to § *6474*, inclusive, and § *6482* to § *6489*, inclusive; also § *6492*, § *6497* and § *6498*.

The basis of the particular case is therefore not to be departed from in the intermediate steps, or in the final determination.

Now, here we find, as before stated, that the plaintiffs charged Hill, not as *debtor* of Simmons, but upon the distinct and separate claim, that he held or controlled property, money, goods, chattels, credits and effects which belonged to Simmons; that Hill in disclosing did not admit any thing under the claim thus made against him, but did admit that

he was in fact *indebted*, either to Simmons or Thrall; that it was then stipulated that Thrall should appear and assert his right to this indebtedness, and that the court, on the authority conferred by such stipulation to. controvert the right to an indebtedness from Hill, ordered- that Thrall should be admitted to maintain his claim to a fund in Hill's hands. In strictness, the admission of Hill in his disclosure, and which was relied upon, was not one within the scope of the plaintiffs' charge; and the order of the court, for a trial of Thrall's right to a *fund* which it assumed to be in Hill's hands or under his control, was not warranted by the stipulation, which contemplated the trial of the right of Thrall to an indebtedness from Hill.

But let it be admitted that an issue was made agreeably to this order respecting Thrall's right to a fund claimed to be in Hill's hands or under his control, and which the plaintiffs alleged to belong to Simmons, still the facts found wholly failed to support the plaintiffs' side of such an issue. And on the other hand, if we may assume that the issue made and tried was, whether the admitted indebtedness of Hill was due or owing to Thrall, intead of Simmons, the facts found were likewise against the plaintiffs. Hence in any view the plaintiffs were not entitled to hold Hill, and the final result was not objectionable.

Judgment affirmed, with costs.

The other Justices concurred.